# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-10-00790-CR
---

**Samuel Shaw, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-09-302334, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Samuel Shaw of the offense of indecency with a child by contact and assessed his punishment, enhanced by a prior felony conviction, at confinement for 45 years in the Institutional Division of the Texas Department of Criminal Justice. *See* Tex. Penal Code Ann. §§ 12.42(b); 21.11(a)(1) (West 2011). On appeal, appellant challenges the sufficiency of the evidence and complains about error in the jury charge. We affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that K.E., the victim in this case, lived with her grandmother, Theodora Dean, whom she called "Baybay," and appellant when she was eight years old. They lived in a two-room house, and K.E. slept with her grandmother and appellant. At trial, K.E. testified about three occasions when, while she was sleeping in her grandmother's bed, appellant put his hand

inside her underwear, moved his hand around, and touched her "privacy parts."[1] She testified that during these incidents appellant touched her on the inside of her privacy with his whole hand, moving it up and down, and it hurt.[2] On the first occasion, K.E. was in bed between appellant and her grandmother. She made appellant stop touching her by snuggling closer to her grandmother. The second time, K.E.'s grandmother was not in bed with them but was in the kitchen cleaning up. K.E. made appellant stop touching her by getting up to use the restroom and moving to another room. On the third occasion, K.E. was sleeping in the bed with appellant while her grandmother slept on the couch. This time, appellant stopped when K.E. went to lie down with her grandmother.

K.E. told her 11-year-old cousin Arianna what appellant had done to her. The girls were playing school when Arianna, playing the teacher, asked, "What would you do if someone was trying to hurt you?" K.E. testified that she told Arianna "something that really happened to [her]"—that appellant had put his hand in her underwear. Arianna took K.E. to tell Arianna's aunt what happened. Andrea Tasby Norwood, known as "Aunt Sue" to K.E., testified at trial as the outcry witness. She stated that K.E. told her that "Baybay['s] boyfriend touched me" when she was asleep in bed. When Norwood asked K.E. where appellant had touched her, K.E. pointed to her genital area.

Theodora Dean, K.E.'s grandmother, testified that K.E. occasionally lived or stayed with her and appellant. She stated that K.E. did not have her own room at the house, so she slept

---

[1] K.E. described her "privacy parts" as the place between her legs where she uses the bathroom or urinates.

[2] The record reflects that K.E. demonstrated how appellant moved his hand for the jury, making a motion with her hand as if waving goodbye.

with them in their bed. Dean testified about a change in K.E.'s behavior. She noticed that K.E. "wasn't all bubbly anymore" when appellant would drive up. Dean recalled a particular incident when she and appellant went to pick up K.E. from her mother and K.E. was crying and screaming that she did not want to go, and begged Dean not to make her go with them.[3] Dean also recalled an incident when she walked into the bedroom and "it just didn't look right to [her]." Dean pulled back the bed covers and saw K.E.'s heel on appellant's private part. When Dean asked appellant what he was doing, he "jumped up and started saying, oh, you think I'm messing with your baby." Dean replied "I never said that." Dean testified, crying, that she did not pursue the issue.

A forensic interviewer from the local child advocacy center testified about her interview of K.E.[4] The interviewer testified that when she asked K.E. why she was at the center, K.E. was hesitant, looked down, covered her face with her hands and cried. Eventually K.E. told her that she was there because of her grandmother's boyfriend. She told the interviewer that appellant put his hand in her "privacy." Using an anatomically correct female doll, K.E. indicated that her "privacy" was between her legs.[5] K.E. stated that appellant opened her underwear and put his hand in there. She said he moved his hand up and down and it hurt. K.E. told the interviewer that

---

[3] Katrina Jones, K.E.'s mother, also recalled that K.E.'s attitude and behavior changed "drastically" in the two to three months before K.E. made her outcry. Jones testified that K.E. had "crying outbursts" and had lost interest in going to see her grandmother, which was very unusual.

[4] A DVD of the forensic interview was admitted into evidence by agreement of the parties and played for the jury.

[5] K.E. pulled up the doll's dress and pulled down the front part of the panties to show the "privacy" on the doll. She also told the interviewer that she used her privacy to go to the restroom.

appellant had touched her privacy more than once and that the touching began when she was seven years old.

Dr. Beth Nauert, a pediatrician and the medical director for the child assessment program at the advocacy center, examined K.E. approximately one year after the abuse occurred. K.E. told Dr. Nauert that she was touched on her private part inside her clothes by her grandmother's boyfriend. She put her hands between her legs over her female sexual organ to show the doctor where she was touched. K.E.'s physical exam was normal, which was consistent with the history she presented to Dr. Nauert of being touched on her private part. Dr. Nauert testified that most of the time that type of examination will be normal, especially where it had been a year since the sexual abuse occurred, and it did not establish whether or not the abuse occurred. Dr. Nauert indicated that many children do not know the female anatomy and do not know that there are several layers of the female sexual organ. She explained to the jury the layers of the female sexual organ and how a person could rub inside a child's private part but not actually go into her vagina. The State's other witnesses included the Austin Police Department detective who investigated the case and Dr. William Carter, a psychologist, who testified regarding the dynamics of child abuse.

The jury found appellant guilty of indecency with a child by contact as alleged in the indictment.[6] This appeal followed.

---

[6] The record reflects that an additional count of aggravated sexual assault of a child was abandoned by that State at trial due to defects in that count of the indictment.

**DISCUSSION**

Appellant raises three points of error on appeal. The first two points assert that the evidence was insufficient to support his conviction. In his third point, appellant argues that he suffered egregious harm due to error in the jury charge. For the reasons that follow, we reject appellant's arguments.

*Sufficiency of the Evidence*

In his first two points of error, appellant challenges the legal and factual sufficiency of the evidence to support his conviction for indecency with a child by contact. We no longer employ distinct legal and factual sufficiency standards when reviewing the sufficiency of the evidence to sustain a criminal conviction. *See Merritt v. State*, 368 S.W.3d 516, 525 n.8 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Instead, the only standard for determining whether the evidence proves the defendant's guilt beyond a reasonable doubt is the *Jackson* due-process standard. *Brooks*, 323 S.W.3d at 912; *see Merritt*, 368 S.W.3d at 525 n.8; *Griego v. State*, 337 S.W.3d 902 (Tex. Crim. App. 2011).

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. The sufficiency of the

5

evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). Thus, when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). We consider only whether the jury reached a rational decision. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to

6

establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* So long as "the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 523. As with any question of circumstantial evidence and inference, "the jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *Boston v. State*, No. 03-10-00399-CR, 2012 WL 2509798, at *3 (Tex. App.—Austin June 27, 2012, pet. filed) (quoting *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.)).

The elements of indecency with a child by contact are that the defendant (1) engaged in "sexual contact," (2) with a child younger than 17 years of age, (3) whether the child is of the same or opposite sex. *See* Tex. Penal Code Ann. § 21.11(a)(1). "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* § 21.11(c).

Appellant first argues that the evidence is insufficient because the physical evidence presented at trial contradicts the sexual contact described by K.E. Appellant asserts that "the complainant's allegation[ ] . . . was three separate acts of penetration into the genitals with a moving adult hand," yet the normal exam results, with a showing that K.E.'s hymen remained intact,

7

combined with Dr. Nauert's testimony, demonstrate that these alleged acts of penetration could not have occurred. At best, appellant's interpretation of the exam results and the doctor's testimony creates a conflict in the evidence, and we find no flaw in the jury's resolution of this conflict against appellant. *See Jackson*, 443 U.S. at 326. The jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778. More importantly, however, sufficient evidence to support appellant's conviction for indecency with a child by contact requires only that the evidence demonstrate that appellant *touched* K.E.'s genitals with the requisite intent. There is no requirement that the evidence demonstrate penetration. As factfinder, the jury may choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The jury could have chosen to believe K.E.'s testimony about appellant touching her "privacy" and concluded that appellant touched her genitals even if they did not believe that he penetrated her sexual organ by touching inside her vagina.

Furthermore, while Dr. Nauert expressed doubts about an eight-year-old child's hymen remaining intact if a grown man placed his whole hand, moving it up and down, inside her female sexual organ, she clearly indicated in her testimony that rubbing a child "inside" her private parts does not necessarily mean touching inside her vagina.[7]

---

[7] The relevant portions of Dr. Nauert's testimony follows:

Q.     Dr. Nauert, is it possible for a man to place his hand, four fingers, inside an eight-year-old's vagina and move it up and down and the hymen remain intact?

Courts recognize that a child victim is often unable to explain the intricacies of sexual abuse in explicit terms. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). As a matter of public policy, child victims of crimes are not expected to testify with the same clarity and ability as expected of mature and capable adults. *Id.* "To expect such a technical requirement of children would be to condone, if not encourage, the searching out of children to be victims of

---

A. It would be unlikely if it was actually into the vagina. You need to remember the female sexual organ consists of a lot more than just a vagina, but I would say four adult fingers, inside of a vagina, it would be unusual.

. . .

Q. Is it possible that when an eight-year-old describes her private part, she may not know the difference between entering the vagina itself or just outside the vagina, but yet -- can you explain to the jury how a child may not understand his or her body or may not be able to describe his or her body accurately.

A. Well, I think it's not just a child; I think children and adults. Most people, you know, don't know that anatomy carefully and they don't know that there are layers of female sexual organs. So the outside layer is called the labia majora. There's skin and fat that's covering up the outside of everything. If you think about a baby girl and you're changing the diaper, and you look at the baby, you just see sort of the big fat skin right there; you're not seeing the vagina. You have to move that apart, like you're cleaning inside for a baby, below that's the labia minora which is the second layer, below that is the hymen, and below is the vagina. So the vagina itself is the fourth layer in, if you will, or the third layer in; it's not just on the very outside part of our body.
So when children say they're [sic] private part, they're usually talking about everything down there between their legs, where they urinate, where the vagina is and all the skin that covers it up.

Q. So an eight-year-old who says 'he went inside my private part' could very well not necessarily be describing the actual vagina.

A. That's correct. Because if I'm looking at a little girl and I'm rubbing inside between those labia, I'm inside her private part, but I'm not down into her vagina.

9

crimes." *Id.* "Where the child has sufficiently communicated to the trier of fact that the touching occurred to a part of the body within the definition of [sexual contact], the evidence will be sufficient to support a conviction regardless of the unsophisticated language that the child uses." *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977).

Here, K.E. described the incidents using terminology consistent with her age. She knew that appellant put his whole hand inside her underwear, and she felt pain when he touched "inside" her privacy. A rational jury could infer from her testimony that appellant placed his whole hand inside her underwear but only partially penetrated her female sexual organ with his fingers. Certainly, a rational jury could conclude that, at a minimum, appellant touched her genitals. The testimony of a child victim alone is sufficient to support a conviction for indecency with a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West 2005); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd). In addition to K.E.'s testimony, however, the jury also heard Dr. Nauert's testimony explaining that children of K.E.'s age often do not have an anatomically accurate understanding of the female sexual organ so that K.E.'s perception of "inside" her privacy could be inside her female sexual organ without penetrating inside the deeper layers to her vagina. Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that the evidence was sufficient to allow the jury to reasonably conclude that appellant touched K.E.'s genitals as alleged in the indictment.

Appellant next contends that the evidence is insufficient because it fails to demonstrate that he engaged in the sexual contact with the intent to arouse or gratify his sexual desire. He argues that the State presented no evidence of intent to arouse or gratify, only speculation,

because there is no evidence of any conduct or remarks on his part that evidenced his intent to arouse or gratify his sexual desire. We disagree.

Rarely will there be direct evidence of what an accused intended at the time of the incident. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental states are almost always inferred from acts and words."). Thus, as with the other essential elements of the offense, circumstantial evidence can be used to establish intent. *See Rivera-Reyes v. State*, 252 S.W.3d 781, 785 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). In the context of indecency with a child, the jury may infer the specific intent to arouse or gratify the sexual desire of a person from the conduct or remarks of the accused, or from the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). No oral expression of intent or visible evidence of sexual arousal is necessary. *Connell v. State*, 233 S.W.3d 460, 471 (Tex. App.—Fort Worth 2007, no pet.); *Scott*, 202 S.W.3d at 408. The intent to arouse or gratify may even be inferred from conduct alone. *McKenzie*, 617 S.W.2d at 216; *Williams v. State*, 305 S.W.3d 886, 891 (Tex. App.—Texarkana 2010, no pet.); *see Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd) (jury could infer intent to arouse or gratify sexual desire from defendant's act of touching child's genitals). Here, a rational jury could infer appellant's intent to arouse or gratify his sexual desire from his conduct under the described circumstances—touching K.E.'s genitals, beneath her underwear, moving his hand up and down, during the night while she was sleeping, on repeated occasions.

In sum, the evidence is sufficient to demonstrate that appellant touched K.E.'s genitals with the intent to arouse or gratify his sexual desire. Accordingly, we find that the evidence

11

is sufficient to support appellant's conviction for indecency with a child by contact. We overrule his first and second points of error.

### Jury-Charge Error

In his third point of error, appellant argues that the jury charge incorrectly included the mental states of "intentionally" and "knowingly," allowing the jury to convict him without finding the specific intent necessary to complete the offense of indecency with a child by contact—the intent to arouse or gratify his sexual desire. He further contends that this jury-charge error caused egregious harm.

As noted in our previous discussion, the elements of indecency with a child are that the defendant (1) engaged in "sexual contact," (2) with a child younger than 17 years of age, (3) whether the child is of the same or opposite sex. *See* Tex. Penal Code Ann. § 21.11(a)(1). Again, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* § 21.11(c).

Count two of the indictment in this case alleged that appellant "did then and there intentionally and knowingly with intent to arouse or gratify the sexual desire of [appellant], engage in sexual contact with [K.E.], a child younger than 17 years of age and not the spouse of [appellant], by touching the genitals of [K.E.]." The jury charge contained the following application paragraph:

12

Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 1st day of August 2009 and before the presentment of this indictment, in the County of Travis, and State of Texas, [appellant] did then and there, intentionally or knowingly, with the intent to arouse or gratify the sexual desire of [appellant], engage in sexual contact with [K.E.] by touching the genitals of [K.E.], a child younger than 17 years of age and not the spouse of [appellant], you will find the defendant guilty of the offense of Indecency with a Child by Contact and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of Indecency with a Child by Contact and say by your verdict not guilty.

The jury charge also provided the statutory definitions of "intentionally" and "knowingly" in the abstract portion of the charge. *See id.* § 6.03(a), (b) (West 2011).

We review alleged jury-charge error in two steps: first, we determine whether error exists; if error exists, we then review for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). Assuming without deciding that the inclusion of the mental states "intentionally" and "knowingly" in the application paragraph constituted jury-charge error,[8] we conclude that appellant has not shown that he suffered "egregious harm" as a result of the instruction.

The degree of harm required for reversal depends on whether the jury-charge error was preserved in the trial court. If the appellant objected to the error at trial, reversal is required if

---

[8] We note that several of our sister courts of appeals have concluded that jury-charge error exists when the application paragraph of the charge disjunctively lists the culpable mental states of "intentionally" and "knowingly" with the specific intent necessary to complete the crime—the intent to arouse or gratify the sexual desire of appellant—because the jury could have convicted appellant without proper consideration of whether he acted with the proper *mens rea* required by the statute. *See Bazanes v. State*, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd); *Jones v. State*, 229 S.W.3d 489, 492 (Tex. App.—Texarkana 2007, no pet.); *Rodriguez v. State*, 24 S.W.3d 499, 502 (Tex. App.—Corpus Christi 2000, pet. ref'd).

13

the error "is calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). In contrast, if the appellant did not object at trial, the error must be "fundamental," and reversal is required only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id.*

Appellant did not object to the jury charge at trial. Thus, the error does not call for a reversal of the conviction unless it was so egregiously harmful under the circumstances as to have denied appellant a fair and impartial trial. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *Almanza*, 686 S.W.2d at 171. Any harm that is inflicted by the erroneous charge must be "assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see Ngo*, 175 S.W.3d at 750 n.48. "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). We engage in this assessment to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

14

Looking at the jury charge as a whole, the abstract portion accurately stated the substantive law on the offense of indecency with a child by contact—including the specific intent to arouse or gratify the sexual desire of any person—thus informing the jury of what the State did and did not have to prove.[9] Although the charge defined "intentionally" and "knowingly" and included those terms in the application portion of the charge, it did not include them in the abstract portion of the charge setting forth the substantive law of indecency with a child. Thus, the complained-of instruction was "corrected or ameliorated" in another portion of the charge. *See Ngo*, 175 S.W.3d at 752. Moreover, the charge included the required specific intent to arouse or gratify appellant's sexual desire in the application paragraph, along with the presumably erroneous "intentionally or knowingly" language. The charge also correctly addressed the indictment, the presumption of innocence, the credibility of witnesses and weight to be given their testimony, and

---

[9] The charge instructed that jury that:

A person commits the offense of Indecency with a Child if with a child younger than 17 years and not his spouse, whether the child is the same or opposite sex, he engages in sexual contact with the child or causes the child to engage in sexual contact.
. . .
"Sexual Conduct" means, if committed with the intent to arouse or gratify the sexual desire of any person:

(1)    any touching by a person, including touching through the clothing, of the anus, breast, or any part of the genitals of a child; or

(2)    any touching of any part of the body of a child, including touching through the clothing, with the anus, breast, or any part of the genitals of a person.

15

the State's burden of proof. Consequently, within the context of the entire jury charge, the erroneous application paragraph appears less harmful.

Regarding the state of the evidence, the primary contested issue at trial was whether the touching occurred. Appellant did not testify, but his attorney challenged K.E.'s credibility and the plausibility of her account of the offense. K.E. testified that, on several occasions, while she was in bed with appellant, appellant put his hand inside her underwear and touched her genitals, moving his hand up and down, touching her inside her "privacy," which hurt her. Appellant's intent was not a contested issue at trial. Appellant's theory of the case was that K.E.'s grandmother and mother manipulated K.E. into saying that appellant had sexually molested her. By finding appellant guilty of indecency with a child, the jury found that appellant touched K.E.'s genitals beneath her underwear as alleged. There is no evidence in the record of any circumstances that would have led the jury to find that appellant engaged in such conduct without the specific intent necessary for indecency with a child. Nor, under the facts of this case, can we conceive of a scenario in which appellant could have touched an eight-year old girl's genitals as described, on multiple occasions, unless he did so with the intent to arouse or gratify his sexual desire.

We next address the arguments of counsel. During closing argument, neither the State nor appellant's counsel referred to any requirement that appellant act intentionally and knowingly. Nor did counsel for either party discuss the requisite specific intent to arouse or gratify the sexual desire of appellant when discussing the elements of indecency with a child. The primary focus of the arguments of counsel was whether the touching occurred at all—the contested issue at trial. Consequently, the jury was not misled by the arguments of counsel.

16

In light of our review of the jury charge, the evidence, the arguments of counsel, and other relevant information, we conclude that the complained-of error in the jury charge did not cause egregious harm to appellant. Accordingly, we overrule his third point of error.

## CONCLUSION

We hold that the evidence was sufficient to support appellant's conviction for indecency with a child by contact and that any error in the jury charge did not cause appellant egregious harm. Accordingly, we affirm the judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Rose

Affirmed

Filed:   August 29, 2012

Do Not Publish