# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00399-CR

**Ronald Glen Boston, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-08-1001, THE HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## **O P I N I O N**

A jury convicted appellant, Ronald Glen Boston, of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2011). The jury further found the enhancement paragraphs of the indictment, alleging two previous sequential felony convictions, to be true and assessed his punishment at confinement for 55 years in the Institutional Division of the Texas Department of Criminal Justice. *See id.* § 12.42(d) (West Supp. 2011). Appellant raises two points of error on appeal. We affirm the judgment of the trial court.

## BACKGROUND

Just after 6:00 a.m. on the morning of October 11, 2008, appellant entered a local San Marcos Shell "Super Stop" convenience store along with his brother, Jacob Hemphill.[1]

---

[1] The facts recited in this opinion are taken from the testimony and exhibits admitted at trial, including the video from the store surveillance cameras.

Appellant immediately went to the counter to purchase a bag of chips and ask for cigarettes and cigars while his brother went to the coffee area. After a somewhat extended transaction, where appellant asked for several different types of cigars, keeping the store clerk busy turning around repeatedly to retrieve the requested items, appellant paid cash for his purchase and then walked over to his brother.

After that, the only other customer in the store made her purchase and left the store. Appellant's brother then went up to the counter with a cup of coffee and a Sprite. The store clerk rang up his purchases, and Hemphill gave her some cash. He then removed a gun from his pants. However, he dropped the gun on the floor. Appellant, walking up behind Hemphill at that moment, looked down at the gun, appeared to hesitate briefly, then proceeded toward the door, loitering slightly behind Hemphill at the counter. After retrieving the gun from the floor, Hemphill held it over the counter, pointing it toward the clerk. When the store clerk opened the cash register to complete the transaction, Hemphill, gun still in hand, reached across the counter and grabbed the cash out of the drawer.[2] Hemphill and appellant then left the store together. Testimony from the store clerk at trial indicated that she never saw the gun.[3]

Following this robbery, appellant and Hemphill robbed two other convenience stores in Austin and "cased" another—all within a two-hour period. Working together with Austin law enforcement, who had received a Crimestoppers tip about the brothers' identity in the Austin

[2] During the grab for the money, Hemphill put the gun down on the counter briefly in order to retrieve the cash from the drawer. After securing the cash, he immediately picked up the gun.

[3] The record reflects that the store clerk, a part owner of the convenience store, was 83 years old at the time of the robbery and 85 when she testified at trial.

robberies, San Marcos authorities eventually identified appellant and Hemphill as the suspects in the San Marcos robbery. Appellant was arrested by Austin authorities for all the robberies.

As officers were about to execute the arrest warrant, they observed appellant place a rifle in the trunk of a vehicle matching the description of the one present at the Super Stop during the robbery and similar to the one depicted on the surveillance video. Subsequent investigation revealed the car was owned by appellant's mother. On executing a search warrant of the car at the scene of the arrest, police recovered a dark blue Adidas gym bag from the trunk. The bag contained a handgun that looked similar to the gun depicted in the video of the Super Stop robbery, along with ammunition. The gun was registered to another brother of appellant. Also inside the bag was a black hoodie, some black wind pants, and a black "doo rag." A detective from the Austin Police Department Robbery Unit testified that law enforcement officers refer to bags containing a gun and that type of clothing as "robbery kits."

Appellant's defense at trial was that he was merely present at the Super Stop, not a party to the aggravated robbery committed by his brother.[4] The State, however, argued that appellant performed the scouting and lookout role during the robbery and that this Super Stop robbery was just the first robbery in a chain of robberies that appellant and Hemphill planned and committed together. The jury convicted appellant and assessed his punishment at 55 years' imprisonment. The trial court sentenced appellant in accordance with the jury's verdict, ordering the sentence to run consecutive

---

[4] Although the State indicted appellant as a primary actor in the robbery, the trial court's jury charge contained an instruction on the law of parties. *See Barnes v. State*, 62 S.W.3d 288, 296 (Tex. App.—Austin 2001, pet. ref'd) (law of parties may be applied to case even though defendant not charged as party in indictment).

to a ten-year sentence already imposed in Travis County, pursuant to a plea bargain, for one of the Austin robberies.[5]

## DISCUSSION

On appeal, appellant's complaints relate to his contention that he cannot be held criminally responsible for the exhibition of a gun by his brother if the store clerk did not see it. We overrule his points of error and affirm the conviction and sentence.

### *Sufficiency of the Evidence*

In his first point of error, appellant complains that the evidence is insufficient to support his conviction for aggravated robbery. First, he argues that the evidence fails to support a finding that a deadly weapon was used or exhibited, the aggravating element, because the evidence showed that the store clerk was not aware of the gun during the robbery. Second, he argues, largely on the same basis, that the evidence is insufficient to prove that the store clerk was threatened or placed in fear of imminent bodily injury or death.

*Standard of Review*

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine

---

[5] The record reflects that appellant was never formally charged with the remaining Austin robbery.

whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). Thus, when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial

evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* So long as "the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 523. As with any question of circumstantial evidence and inference, "the jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.).

Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Allen v. State*, 249 S.W.3d 680, 688 (Tex. App.—Austin 2008, no pet.). We consider only whether the jury reached a rational decision. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

*Aggravated Robbery*

As indicted in this case, a person is guilty of aggravated robbery if he "commits robbery" and, during the commission thereof, "uses or exhibits a deadly weapon."[6] Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). A person commits robbery "if, in the course of committing theft

---

[6] The indictment alleged that appellant "while in the course of committing theft of property and with intent to obtain or maintain control of said property, did knowingly and intentionally threaten or place [the store clerk] in fear of imminent bodily injury or death, and during the commission of the offense did then and there use or exhibit a deadly weapon, to wit: a handgun."

6

. . . and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(2) (West 2011). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a) (West Supp. 2011).

*Law of Parties*

A person is criminally responsible for an offense committed by another if, acting with the intent to promote or assist the commission of the offense, that person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2) (West 2011). Thus, under the law of parties, the State may enlarge an accused's criminal responsibility to include acts in which he may not be the principal actor. *See id.* § 7.01(a) (West 2011); *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996). A person can be convicted as a party even if the indictment does not explicitly charge him as a party. *Marable v. State*, 85 S.W.3d 287, 288 (Tex. Crim. App. 2002). When, as in this case, an accused is not the principal actor, the State must prove conduct constituting an offense plus an act committed by the defendant with intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Miller v. State*, 83 S.W.3d 308, 313 (Tex. App.—Austin 2002, pet. ref'd).

*Use or Exhibition of a Deadly Weapon*

To "use" a deadly weapon during the commission of an offense means that the deadly weapon was employed or utilized in order to achieve its purpose; to "exhibit" a deadly weapon requires only that it be consciously displayed during the commission of the required felony offense. *Patterson v. State*, 769 S.W.2d 938, 940-41 (Tex. Crim. App. 1989); *see McCain v. State*,

7

22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (butcher knife partially concealed in appellant's pocket during attack was deadly weapon used or exhibited in facilitating offense). The law does not require that the actor commit an overt gesture with the weapon; the mere carrying of a weapon during a robbery can be legally sufficient evidence for a jury to conclude that the intended use of the weapon was that it be capable of causing death or serious bodily injury. *McCain*, 22 S.W.3d at 503. A pistol or handgun is a deadly weapon per se under the Texas Penal Code. *Williams v. State*, 567 S.W.2d 507, 509 (Tex. Crim. App. 1978); *see* Tex. Penal Code Ann. § 1.07(a)(17)(A) (West 2011).

*Analysis*

Appellant does not challenge the sufficiency of the evidence to support his conviction as a party. That is, he does not assert that the evidence failed to demonstrate that he committed an act with intent to promote or assist conduct constituting an offense. Rather, he argues that the evidence failed to prove conduct constituting the charged offense. *See Beier*, 687 S.W.2d at 3; *Miller*, 83 S.W.3d at 313. He contends that the offense to which he was a party was not aggravated robbery or robbery but, at most, theft.

Appellant does not dispute that the surveillance video depicts Hemphill producing a gun during his "purchase" and holding the gun, pointed toward the clerk, while he grabbed the cash from the register. However, appellant maintains that the evidence was insufficient to prove the aggravating element—that a deadly weapon was used or exhibited—because the store clerk testified that she did not know Hemphill had a gun when he took the cash from the register. Appellant contends that there was no evidence that *anyone* conveyed a threat to the store clerk by using or

8

exhibiting a weapon when the theft occurred. He asserts that "[f]or a legal finding that a deadly weapon was used or exhibited, the threat of a deadly weapon must be perceived by the complainant." We disagree.

Appellant conflates two separate elements, the deadly-weapon element of aggravated robbery and the threaten-or-place-in-fear element of robbery. A person commits robbery when, during the commission of theft, he threatens or places another in imminent fear of bodily injury or death. Tex. Penal Code Ann. § 29.02. While the use or exhibition of a deadly weapon may threaten or place another in fear of imminent harm, there is no requirement that the actor use or exhibit a deadly weapon to accomplish the threat or place the other person in fear. For example, a defendant may, during the commission of theft, verbally threaten to kill someone without using or exhibiting a deadly weapon. That defendant has committed robbery by threat. *See id.* If that defendant also displays a gun while making the verbal death threats, he has committed aggravated robbery due to the exhibition of a deadly weapon. *See id.* § 29.03(a)(2). The defendant's conduct of using or exhibiting a deadly weapon aggravates the robbery. *See id.* Nothing in the statute requires that the deadly weapon itself be the mechanism of threat or the means of placing another in fear of imminent harm. Nor does the statute require the perception of that deadly weapon by another. It is the *use or exhibition* of a deadly weapon—not its perception by the victim—that is the aggravating element of aggravated robbery with a deadly weapon.

Similarly, during the commission of an assaultive offense perpetrated by threats, it is not necessary for the victim to perceive that threat. The court of criminal appeals has held that assault by threat is a conduct-oriented offense, "focusing upon the act of making a threat, regardless of any result that threat may cause." *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App.

9

2008). Robbery is a form of assault. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999). Thus, the court of criminal appeals has held that the logic that governs assaultive offenses governs robbery as well. *See id.* It follows that aggravated robbery by threat focuses on the defendant's act of threatening another during the commission of theft, i.e., the defendant's conduct, not on the victim's perception of that threat. In this case, the store surveillance video clearly depicts Hemphill exhibiting the gun before and during his seizure of the cash from the register. Thus, the evidence is sufficient to establish the aggravating element of using or exhibiting a deadly weapon.[7]

Appellant next argues that the evidence is insufficient to prove the "threaten or place in fear" element of robbery because, regardless of whether a deadly weapon was used, the evidence fails to establish that the store clerk was placed in fear. He argues that the store clerk's responses were inconsistent with those of a person in fear of imminent harm. Appellant bases his argument on the fact that the store clerk, in a reflex action, attempted to grab Hemphill's hands to stop him

---

[7] With respect to party liability for the use or exhibition of a deadly weapon as an element of aggravated robbery, there must be evidence that the defendant not only participated in the robbery before, while, or after a deadly weapon was displayed, but did so while being aware that the deadly weapon would be, was being, or had been used or exhibited during the offense. *Wyatt v. State*, Nos. 14-10-01222-CR, 14-11-00006-CR, & 14-11-00007-CR, 2012 WL 697139, at *4 (Tex. App.—Houston [14th Dist.] Mar. 6, 2012, no pet.); *Adkins v. State*, 274 S.W.3d 870, 875 (Tex. App.—Fort Worth 2008, no pet.); *Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). The evidence in the record here supports a finding that appellant was aware of the gun and knew that his brother would be using or exhibiting the gun during the robbery. The video depicts appellant looking down at the gun when Hemphill dropped it on the floor, perhaps even hesitating slightly next to it. Thus, there is evidence that appellant knew, before it was exhibited to the store clerk, that Hemphill had the gun. The evidence also supports a reasonable inference that appellant knew his brother would be using or exhibiting it during the robbery. The record reflects that appellant and Hemphill executed multiple robberies during their crime spree, acting together with one investigating the register area during a purchase and then acting as lookout while the other took the cash from the register while holding a gun pointed at the clerk. In fact, later in their robbery spree, appellant is the one wielding the gun. Thus, the evidence is sufficient to establish the aggravating element as it related to appellant as a party to the offense.

from taking the money from the register and then, after the robbery, followed appellant and Hemphill out of the store to determine which way they went. However, the clerk testified that during the robbery she "definitely" feared being hurt, possibly seriously injured. Also, the evidence reflects that the store clerk was "in shock," "so upset at the time," "too upset to call the police," "upset . . . real upset," and "nervous." Further, the responding police officer testified that when he interviewed the store clerk after the robbery, she was visibly upset and was shaking. This evidence supports the inference that the store clerk was placed in fear of imminent bodily injury or death.[8] There is no requirement that the store clerk use the exact phrase "I was in fear of imminent bodily injury or death" when expressing her fear. Nor is there a requirement that her knowledge of the gun be the cause of her fear of imminent harm.

Moreover, "[b]y defining robbery to be theft plus *either* threatening or placing another in fear, [the robbery] statute demonstrates that the term 'threaten' means something other than placing a person 'in fear of imminent bodily injury or death.'" *Olivas v. State*, 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006) (emphasis in original); *see Vaughn v. State*, 634 S.W.2d 310, 312 (Tex. Crim. App. 1982) (aggravated robbery can be committed by either threatening or by placing another in fear of imminent bodily injury or death); *see also Howard v. State*, 306 S.W.3d 407, 410 (Tex. App.—Texarkana 2010) ("Under the 'placed in fear' language of [the robbery statute], the fact-finder may conclude that an individual was 'placed in fear' in circumstances where no actual

---

[8] When asked if she found Hemphill's actions threatening, she responded, "Well, I think if you put a gun up on the counter, that is threatening." According to her testimony, the store clerk discovered the robber had a gun after the fact from the surveillance video. Because she was not aware of the gun at the time, we do not construe this testimony to mean that the presence of the gun caused her to *feel* threatened.

11

threats are conveyed."), *aff'd*, 333 S.W.3d 137 (Tex. Crim. App. 2011). The record in this case clearly demonstrates that, whether or not she was placed in fear of imminent harm, the store clerk was threatened.

In a similar vein, appellant also argues that because neither he nor Hemphill verbally threatened the store clerk, she was not threatened. However, a threat need not be voiced; it can be communicated by the accused's actions or conduct. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984); *Donoho v. State*, 39 S.W.3d 324, 329 (Tex. App.—Fort Worth 2001, pet. ref'd) (op. on reh'g). In determining whether a defendant has threatened another, the crucial inquiry is whether the assailant acted in such a manner as would, under the circumstances, portend an immediate threat of danger to a person of reasonable sensibility. *Olivas*, 203 S.W.3d at 347. "So long as the defendant's actions are of such nature as in reason and common experience is likely to induce a person to part with his property against his will, any actual *or* perceived threat of imminent bodily injury will satisfy this element of the offense." *Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2010) (emphasis added). The act of pointing a gun at an individual is, by itself, threatening conduct. *See Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. denied) (pointing loaded gun at individual is threatening conduct which supports conviction for aggravated assault.); *Rodriguez v. State*, 955 S.W.2d 171, 174 (Tex. App.—Amarillo 1997, no pet.) (pointing gun at supposed victim sufficient evidence of threat for aggravated assault). Further, because, as discussed previously, a victim need not perceive the assaultive threat, a victim likewise need not perceive the threat made by the pointing of the gun. We conclude that the act of brandishing a gun, when done during the course of committing theft, supports a conviction for aggravated robbery by threat, even when the victim is not aware of the gun.

12

We hold that the evidence in this record is sufficient to establish the aggravating element of using or exhibiting a deadly weapon as well as the element of threatening or placing another in fear of imminent bodily in jury or death. Therefore, the evidence is sufficient to support appellant's conviction for aggravated robbery. Accordingly, we overrule his first point of error.

### *Lesser-Included-Offense Instruction*

In his second point of error, appellant contends that the trial court erred in failing to instruct the jury on the lesser-included offense of theft. Appellant maintains that because the evidence was insufficient to support his conviction for aggravated robbery or robbery, he was entitled to an instruction on the lesser-included offense of theft. However, appellant did not request that such an instruction be submitted to the jury in the court's charge at trial.

Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010) (citing *Ford*, 305 S.W.3d at 532). To preserve a complaint for appellate review, a party must have presented a specific and timely request, motion, or objection to the trial court and, further, must have obtained an adverse ruling. Tex. R. App. P. 33.1(a); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). Most complaints are subject to forfeiture by failure to comply with Rule 33.1(a) of the Rules of Appellate Procedure. *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

Rule 33.1 represents the concept of "party responsibility," in which the "complaining party bears the responsibility [for] clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Pena v. State*, 285 S.W.3d 459, 463-64 (Tex. Crim. App. 2009). "To avoid forfeiting a complaint on appeal, the party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Id.* at 464 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

Here, appellant did not request the lesser-included-offense instruction, nor did he object to the court's charge based on the absence of such an instruction. Thus, he forfeited his right to complain on appeal about the trial court's failure to include an instruction on theft in the jury charge. We overrule appellant's second point of error.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   June 27, 2012

Publish

14