IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1023-12






RONALD GLEN BOSTON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


HAYS COUNTY





 Hervey, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Appellant, Ronald Glen Boston, was found guilty of aggravated robbery and was
sentenced to fifty-five years' imprisonment. The Third Court of Appeals affirmed the
judgment of the trial court, and Appellant filed a petition for discretionary review. Boston
v. State, 373 S.W.3d 832 (Tex. App.--Austin 2012, pet. granted). We granted review to
determine whether the Third Court of Appeals erred when it held that the victim was
threatened or placed in fear of imminent bodily injury or death when the evidence showed
that no threat was perceived by the victim. Because we conclude that a rational jury could
have inferred that the victim was threatened and placed in fear, we will affirm the
judgment of the court of appeals.

FACTS

 The victim of the crime, Rosalee Johnson, was an eighty-three year-old owner of,
and clerk, at a Shell Super Stop in San Marcos, Texas. At the time of the aggravated
robbery, (1) Johnson was working at the register and an employee was stocking the back
room. Appellant entered the store with Jacob Hemphill. Hemphill went to the coffee
station in the store. Appellant went to the counter and distracted Johnson by asking about
different types of cigarettes and cigars for sale, forcing Johnson to repeatedly turn around.
He also delayed the payment process by searching his pockets for money for an extended
period of time and then dropping coins on the ground. After Appellant completed his
purchase, he walked towards Hemphill and the coffee station. Once the last customer left,
Hemphill approached the counter with a soda and coffee. He set the soda and coffee on
the counter by the register, pulled out money, and handed the money to Johnson to pay for
his purchase. After handing Johnson the money, Hemphill reached into one of his pockets
and pulled out a firearm, which he dropped on the floor. Appellant walked by and looked
at the firearm but did not pick it up. Hemphill then picked up the firearm, briefly pointed
it at the clerk, and set it on the counter pointed at the clerk. Johnson, however, did not see
the firearm and rang up the sale of the soda and coffee. When the register was open,
Hemphill reached over the counter and took money from the cash register with both
hands. The clerk grabbed his hands to stop him, but he pulled away. Leaving the soda and
coffee, Hemphill grabbed his firearm, and Appellant and Hemphill ran out of the store
together. Johnson yelled to the other employee in the back, "I've been robbed, please
come and call the police[,]" and she ran outside after Appellant and Hemphill. The other
employee called the police.

 At trial, Johnson testified that she did not realize that Hemphill had a firearm until
she saw the video of the robbery. She also testified that she was "very upset" and
"shocked" during the robbery. When asked if Appellant threatened her, she stated that the
robbers "didn't say anything." When asked if she perceived Hemphill's actions as
threatening, Johnson stated that putting a firearm on the counter is threatening behavior,
but she conceded that she never saw the firearm. She also testified that, during the
robbery, she feared that she could be injured, perhaps seriously, and that she would not
have run outside after Appellant and Hemphill if she knew that they had a firearm. 

PROCEDURAL HISTORY

 Under the law of parties, Appellant was charged with, and convicted of,
aggravated robbery. With two enhancements, his sentence was assessed at fifty-five
years' confinement in the Correctional Institutions Division of the Texas Department of
Criminal Justice.

 On appeal, Appellant made two arguments regarding sufficiency of the evidence
relevant to the disposition of this case. First, Appellant argued that the evidence was
insufficient to support Appellant's conviction for aggravated robbery because there was
no evidence that Appellant threatened Johnson or placed her in fear of imminent bodily
injury or death since she never saw the firearm. See Boston, 373 S.W.3d at 836. Second,
Appellant asserted that, because Johnson did not see the firearm, there was insufficient
evidence adduced at trial to support a deadly-weapon finding. Id. The court of appeals
rejected both of these arguments and affirmed the judgment of the trial court. Id. at 838,
840. With respect to the evidence supporting the element of "threatens" or "places a
person in fear," the court reasoned that a victim may be threatened or placed in fear even
if the victim does not see a firearm, and that the victim need not perceive the threat; the
only requirement is that the defendant engage in threatening conduct. See id. at 840; see
also Olivas v. State, 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006). The court of
appeals went on to hold that the act of Hemphill placing the firearm on the counter was
sufficient conduct, under the law of parties, to establish the aggravated element of using
or exhibiting a deadly weapon as to Appellant. Boston, 373 S.W.3d at 840.

 We granted review to answer whether "[t]he Court of Appeals erred when it held
that the victim was threatened or placed in fear of imminent bodily injury or death when
the evidence showed that no threat was perceived by the victim."

ARGUMENTS OF THE PARTIES

 Appellant argues that the court of appeals erred when it held that Johnson was
threatened or placed in fear of imminent bodily injury or death because the evidence
showed that no threat was perceived by Johnson. Specifically, Appellant contends that the
question of whether a victim must perceive a threat to prove the element of "threatens" in
a robbery case has not yet been decided, and Appellant asserts that both Landrian v. State,
268 S.W.3d 532 (Tex. Crim. App. 2008) and Olivas v. State, 203 S.W.3d 341 (Tex. Crim.
App. 2006) dealt with the issue of assault-by-threat, not robbery-by-threat and, thus, do
not directly address the issue at hand. Appellant also reads a key section of our opinion in
Howard v. State, 333 S.W.3d 137 (Tex. Crim. App. 2011), as defining the difference
between "threatening" and "placing another in fear" as a distinction between explicit and
implicit threats respectively, rather than the victim perceiving the threat. (2)

 Lastly, Appellant argues that the standard developed in Cranford v. State, 377
S.W.2d 957, 959 (Tex. Crim. App. 1964) and Green v. State, 567 S.W.2d 211, 213 (Tex.
Crim. App. [Panel Op.] 1978), requires the victim to perceive a threat and to be placed in
fear as a result of a robber's actions. As the victim did not perceive a threat in this case,
and was not placed in fear as a result of Appellant or Hemphill's actions, Appellant
argues that the court of appeals decision should be reversed and remanded.

 The State argues that Appellant is not entitled to relief because Appellant
threatened Johnson, the threat was perceived by Johnson, and Johnson was placed in fear
because of Appellant's threatening conduct. First, the State asserts that there is a
distinction between "threatens" and "places another in fear" under the robbery statute,
and it contends that, by placing the firearm on the counter, Hemphill created an implicit
threat even if the action did not place the victim in fear. To support this argument, the
State cites our discussion in Howard regarding the culpable mental state "knowingly."
Howard, 333 S.W.3d at 139-40.

 Second, the State acknowledges our holding in Cranford that, when a victim is
placed in fear, the fear must arise from the actions of the defendant and not the timidity of
the victim. However, the State asserts that Johnson was placed in fear because she was
afraid of being injured during the robbery because of Hemphill's threatening actions, not
because of any timidity related to her age or physical characteristics. Cranford, 377
S.W.2d at 959.

DISCUSSION

 A person commits robbery if, in the course of committing theft, he intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death. Tex.
Penal Code § 29.02(a)(2). A person commits aggravated robbery if he commits robbery
and uses or exhibits a deadly weapon. Id. § 29.03. A deadly weapon is defined, in relevant
part, as "a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury." Id. § 1.07(17)(A). 

 To resolve the question presented, we must first construe the robbery statute.
Statutory construction is a question of law and is reviewed de novo. Harris v. State, 359
S.W.3d 625, 629 (Tex. Crim. App. 2011). The goal of a statutory construction analysis is
to "effectuate the collective intent or purpose of the legislators who enacted the
legislation." Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). To ascertain
that collective intent or purpose, we first look to the plain language of the statute.
Swearingen v. State, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010). When interpreting the
plain language of a statute, "each word, phrase, clause, and sentence in a statute should be
given effect if reasonably possible." Tapps v. State, 294 S.W.3d 175, 177 (Tex. Crim.
App. 2009) (quoting State v. Hardy, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). If
however, the plain language of the statute would lead to absurd results the Legislature
could not have intended or is ambiguous, then we may consult extra-textual sources to
ascertain the collective intent or purpose of the enacting legislators. Swearingen, 303
S.W.3d at 732.

 Because we have reviewed similar issues in prior decisions, it is helpful to review
those cases now. The first case involves robbery-by-placing-in-fear and the second
assault-by-threat.

 In Howard v. State, 333 S.W.3d 137 (Tex. Crim. App. 2011), the appellant was
charged with, and convicted of, aggravated robbery after entering a convenience store and
robbing the on-duty clerk. Id. at 137-38. The clerk was in an office in the back of the
store and saw the appellant enter with his rifle through a closed-circuit security system.
Id. at 138. The clerk locked the door and called the police. Id. The appellant could not
open the register, but he stole the clerk's wallet and some money under the register. Id.
On appeal, the question was whether the offense of aggravated robbery requires
interaction between the accused and the victim. Id. We held that 

robbery-by-placing-in-fear does not require that a defendant know that he
actually places someone in fear, or know whom he actually places in fear.
Rather it requires that the defendant is aware that his conduct is reasonably
certain to place someone in fear, and that someone actually is placed in fear.


Id. at 140. Our holding turned on our interpretation of the latter phrase of the statutory
subsection, "places another in fear," and not the former (and more relevant to this case),
"threatening . . . imminent bodily injury." We concluded that there was sufficient
evidence in the record to infer that the appellant was aware that his actions would be
reasonably certain to place the victim in fear of imminent bodily injury or death, and that
the fact that the appellant did not see the victim--who testified that he was
frightened--was irrelevant to our analysis.

 In Olivas v. State, 203 S.W.3d 341 (Tex. Crim. App. 2006), the appellant was
charged, in relevant part, with aggravated-assault-by-threat when the appellant followed
the victim and shot at her truck. Challenging the conviction on appeal, the appellant
argued that "the State failed to prove the element of 'threaten with imminent bodily
injury.'" Id. at 343. Specifically, he alleged that the victim had not been "threatened"
because she did not perceive the threat at the time that the offense occurred (i.e., that the
appellant was shooting at her). Id. at 343-44. In our analysis, we first noted that the
ordinary definitions of "threat" and "threatening" were ambiguous because they "could
indicate either an act that is communicated by the actor to another, regardless of whether
it is successfully perceived by the intended recipient, or one that is successfully
communicated to the intended recipient." Id. at 346. We then compared the offense to
other Texas Penal Code offenses using "threaten" as an element--aggravated robbery and
terroristic threat--and concluded that both statutes

imply that one can threaten without necessarily placing another in fear of
imminent bodily injury. A logical inference from this is that "threatening,"
as used in the Penal Code, does not require that the intended victim perceive
or receive the threat, but "placing another in fear of imminent bodily injury
does."


Id. Although we analyzed the question of whether a threat must be perceived to sustain a
conviction for robbery, we declined to reach the ultimate issue because we determined
that there was sufficient evidence in the record to infer that the victim did in fact perceive
the threat. Olivas, 203 S.W.3d at 349. In reaching that conclusion, we noted that, although
the victim "did not instantaneously realize that [the] appellant had fired shots at her, she
knew that [the appellant] had done something threatening to her. And she was
frightened." Olivas, 203 S.W.3d at 350 (emphasis in original). Moreover, we stated that
"there is no statutory requirement that a victim must instantaneously perceive or receive a
threat of imminent bodily injury as the actor is performing it." Id. We also noted that,
although the victim "did not comprehend that she was being shot at as [the] appellant
fired at her car," her "realization moments later of what [the appellant] had done
nonetheless placed her in great fear." Id. at 350-51. 

 Although the question presented for our review assumes that the victim did not
perceive a theat, (3) we disagree. Webster's New College Dictionary defines the word,
"perceive" as, "1. To become aware of directly through the senses . . . 2. To take notice
of . . . [or] 3. To achieve understanding of." Webster's II: New College Dictionary
815 (1999). Under these definitions, based on our analysis in Olivas, and based on our
review of the record in this case, there was sufficient evidence for a rational jury to infer
that Hemphill threatened Johnson by his actions, that Johnson perceived the threatening
behavior based on her testimony at trial, and that Johnson was placed in fear of imminent
bodily injury because of Hemphill's threatening behavior.

 When Johnson opened the register to make change for Hemphill's purchase of a
soda and coffee, Hemphill reached over the counter and took all of the money out of the
register. (4) While Johnson testified that she did not see Hemphill's firearm during the
robbery, brandishing a firearm is not the only way in which a person can be threatened or
placed in fear in accordance with the statute. We believe that Hemphill's conduct in
reaching over the counter and taking money from the cash register was threatening
because his actions were "a menacing indication of (something dangerous, evil, etc.)." (5)
This conclusion is supported by Johnson's testimony that she feared that she could have
been injured during the robbery and by her almost immediate realization that she had just
been robbed--"I've been robbed, please come and call the police." We hold that the
evidence in this case is sufficient to sustain Appellant's conviction for aggravated robbery
under the law of parties.

CONCLUSION

 The court of appeals did not err when it affirmed Appellant's conviction for
aggravated robbery because a rational jury could have inferred that the victim was
threatened, that the victim perceived the threat, and that the victim was placed in fear as a
result of the perceived threat. We affirm the judgment of the court of appeals.

 Hervey, J.

Delivered: October 9, 2013

Publish


 



 
1. A person commits robbery if, in the course of committing theft, he intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal
Code § 29.02(a)(2). A person commits aggravated robbery if he commits robbery and uses or
exhibits a deadly weapon. Id. § 29.03.
2. Howard, 333 S.W.3d at 139. Appellant cites the following excerpt from this Court's
opinion in Howard:


The plain language of the statute encompasses not just explicit threats, but
whatever implicit threats may lead to the victim being placed in fear. So long as
the defendant's actions are "of such nature as in reason and common experience is
likely to induce a person to part with his property against his will," any actual or
perceived threat of imminent bodily injury will satisfy this element of the offense.


Id. (footnotes omitted). The first sentence of this excerpt discusses the breadth of conduct under
Section 29.02(a)(2) of the Texas Penal Code that could lead to a person being placed in fear.
Thus, we concluded in the next sentence that "any actual or perceived threat of imminent bodily
injury will satisfy [the place-another-in-fear] element of the offense." This interpretation is
supported by our statement later in Howard that "robbery-by-placing-in-fear does not require that
a defendant know that he actually places someone in fear, or know whom he actually places in
fear. Rather, it requires that the defendant is aware that his conduct is reasonably certain to place
someone in fear, and that someone actually is placed in fear." Id. at 140.
3. The ground for review stated, "The Court of Appeals erred when it held that the victim
was threatened or placed in fear of imminent bodily injury or death when the evidence showed
that no threat was perceived by the victim."
4. Johnson testified that there was approximately $200 in the cash register.
5. Olivas, 203 S.W.3d at 345 (stating one definition of "threaten").