

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00190-CR

Joshua **MOLINA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR0078
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: April 1, 2020

AFFIRMED

Joshua Molina appeals his convictions for aggravated robbery and burglary of a habitation

with the intent to commit a felony.  In a single issue on appeal, Molina challenges the sufficiency

of the evidence supporting his convictions.  We affirm.

**BACKGROUND**

On March 24, 2017, two men approached Giselle Benavides[1] outside her home at around 11:00 p.m.  Giselle described one of the men, who was later identified as Molina, as Hispanic, big, and  "kind of … chunky" with a scar on his eye and a neck tattoo.  Giselle described the second man, who was not identified, as a little shorter and not as big.  Molina and the second man were looking for Giselle's brother, Aaron Salazar.  Giselle retrieved Salazar from inside the house.  Salazar spoke with the men and, ultimately, gave the men some of his personal belongings.

A few hours later, at around 1:25 a.m., Giselle was in her room when she heard the front door being kicked.  Giselle then heard men asking her little brother, Timothy, who had been sleeping on the living room sofa about Salazar, who was no longer home.  Molina and the second man pushed their way into Giselle's room and asked her about Salazar.  Giselle recognized the men who kicked in the door as the same two men, including Molina, who had been looking for Salazar earlier.  According to Giselle, the men were carrying firearms — Molina carried an assault rifle, and the second man carried a handgun.  The men then went to the room of Giselle's mother, Jessica Benavides, who yelled at the men to get out of her house.  The men pointed their firearms at Jessica.  Giselle "got in front of [Jessica] and so [Molina and the second man] were pointing the guns" at both women.  The men then entered Salazar's room and began taking items from the room, including speakers, a television, clothes, and prescription medication.  According to Rodolfo Leal, Giselle's stepfather who was present at the time of the incident, Molina also took a lockbox from Jessica's room.  Molina then attempted, unsuccessfully, to take a television that was mounted on the living room wall before leaving.

---

[1] Giselle's surname is listed as "Benavidez" in documents contained in the clerk's record but Giselle related the spelling of her surname as "Benavides" at trial.

The State ultimately charged Molina with three counts of aggravated robbery and one count of burglary of a habitation with the intent to commit a felony. The State waived and abandoned two counts of aggravated robbery, and the jury convicted Molina of aggravated robbery and burglary of a habitation with the intent to commit a felony. Based upon the jury's recommendation, the trial court sentenced Molina to fifteen years' imprisonment for aggravated robbery and five years' imprisonment for burglary of a habitation with the intent to commit a felony. The trial court ordered that the sentences be served concurrently. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

Molina contends the evidence presented at trial is insufficient to support his convictions. Molina argues the witnesses' testimonies contain too many contradictions to support his convictions. Molina additionally argues the State did not prove he did not have permission to enter the home.

## Standard of Review

When examining the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, a jury could have found the essential elements of the offense beyond a reasonable doubt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). A factfinder may infer intent from circumstantial evidence such as a defendant's acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The factfinder may choose to believe some, all, or none of the testimony provided by any witnesses, and give different weight to different testimony if it so chooses. *Baez v. State*, 486 S.W.3d 592, 594 (Tex. App.—San Antonio 2015, pet. ref'd). We presume that the

factfinder resolved any conflicts in favor of the verdict, and we defer to that resolution. *Merritt*, 368 S.W.3d at 525–26.

**Applicable Law**

### 1. *Aggravated Robbery*

As pertinent to this case, a person commits the offense of robbery if "in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he … intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a). A person commits theft if "he unlawfully appropriates property with intent to deprive the owner of property." *Id*. § 31.03(a). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id*. § 29.01(1). Finally, among other ways of committing the offense at issue in this appeal, a person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *Id*. § 29.03(a)(2).

In this case, the jury charge for Count I authorized jurors to find Molina guilty of aggravated robbery with a deadly weapon if they found Molina

> while in the course of committing theft of property and with intent to obtain and maintain control of said property, did intentionally or knowingly threaten or place Giselle … in fear of imminent bodily injury or death, and … Molina did use or exhibit a deadly weapon, to-wit: a firearm … .

### 2. *Burglary of a Habitation*

Under Texas law, a person can be found guilty of burglarizing a habitation if it is proven that he entered a habitation without the effective consent of the owner with the intent to commit a felony, a theft, or an assault, or that he entered a habitation without the effective consent of the owner and committed or attempted to commit these offenses. *See* TEX. PENAL CODE ANN.

§ 30.02(a)(1), (3). Count II[2] of the indictment in this case alleged two alternate ways of committing burglary of a habitation with the same alleged felony — aggravated assault. A person commits the offense of assault if the person intentionally or knowingly threatens another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(2). A person commits aggravated assault if the person commits the offense of assault as described in section 22.01 of the Penal Code and uses or exhibits a deadly weapon during the commission of the assault. *Id*. § 22.02(a)(2).

The jury charge instructed jurors to find Molina guilty of burglary of a habitation if they found

> Molina, did intentionally or knowingly enter a habitation, with intent to commit the felony offense of aggravated assault, without the effective consent of … the owner, [Jessica,]

> Or … Molina, did intentionally or knowingly enter a habitation, and therein attempted to commit or committed the felony offense of aggravated assault, without the effective consent of … the owner, [Jessica.]

The jury charge also instructed jurors to find whether Molina used or exhibited a deadly weapon during the commission of the offense.

### 3. *Threat of Imminent Bodily Injury*

"Threatens" is not defined in the Penal Code, but the Court of Criminal Appeals has recognized the plain language of section 22.01(a)(2), and past jurisprudence indicates threat requires proof that, by his conduct, a defendant intended to cause an apprehension of imminent bodily injury. *See Teeter v. State*, PD-1169-09, 2010 WL 3702360, at *6 (Tex. Crim. App. Sept. 22, 2010) (not designated for publication). "Imminent" is also not defined in the Penal Code, but the Court of Criminal Appeals has defined the term to mean "ready to take place, near at hand, hanging threateningly over one's head, menacingly near." *Garcia v. State*, 367 S.W.3d 683, 689

---

[2] After the State waived and abandoned two counts, the indictment was renumbered, with Count IV becoming Count II.

(Tex. Crim. App. 2012) (internal citations omitted). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8).

### 4. Use or Exhibition of a Deadly Weapon

To "use" a deadly weapon during the commission of an offense means that the deadly weapon was employed or utilized in order to achieve its purpose — the commission of a felony offense; to "exhibit" a deadly weapon requires only that it be consciously displayed during the commission of a felony offense. *Patterson v. State*, 769 S.W.2d 938, 940–41 (Tex. Crim. App. 1989); *see McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (determining that a butcher knife partially concealed in the appellant's pocket during an attack was a deadly weapon used or exhibited in facilitating the offense). It is not required that an overt gesture be committed with the weapon; merely carrying a weapon during a robbery can be sufficient for a jury to conclude that the intended use of the weapon was that it be capable of causing death or serious bodily injury. *Boston v. State*, 373 S.W.3d 832, 838 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013). The act of pointing a firearm at a person is, by itself, threatening conduct that can support a conviction for aggravated assault. *See Jones v. State*, 500 S.W.3d 106, 113 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A firearm is a per se deadly weapon. *Safian v. State*, 543 S.W.3d 216, 221 n.5 (Tex. Crim. App. 2018); *see* TEX. PENAL CODE ANN. § 1.07(a)(17)(A).

### Discussion

Here, Giselle testified Molina, along with the second man, kicked in the front door of her home. Jessica and Giselle both identified photos showing the damage to the front door's frame. Further, Jessica — the owner — testified she did not give Molina consent to enter her home. *See Morgan v. State*, 501 S.W.3d 84, 92 (Tex. Crim. App. 2016) (noting that "the testimony of an owner that she did not give permission to enter the habitation is 'sufficient to establish the absence

of effective consent'") (quoting *Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. 1980)). Giselle and Jessica also testified that Molina took several items from the home, including speakers, a television, clothing, and prescription medication. Jessica further testified Molina took a lockbox from her closet and attempted to take a second television from the living room. Giselle testified that, when he entered the home, Molina carried an assault rifle, which he pointed at her and Jessica. Additionally, Leal testified Molina pointed what Leal thought was a shotgun "right in [his] face." Leal also testified Molina pointed the same "shotgun" at Leal's youngest son.

Viewing the evidence in the light most favorable to the verdict, we conclude a rational factfinder could have found the essential elements of aggravated robbery. Likewise, viewing the evidence in the light most favorable to the verdict, we conclude the evidence in this case is sufficient to sustain the jury's verdict that Molina committed burglary of a habitation with intent to commit or attempted to commit a felony. Therefore, we conclude the evidence in this case is sufficient to sustain Molina's convictions for aggravated robbery and burglary of a habitation.

Molina's sole issue on appeal is overruled.

## CONCLUSION

For the above reasons, we affirm the judgments of the trial court.

Irene Rios, Justice

DO NOT PUBLISH