# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00345-CR

**James Alba, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT
### NO. CR01119, THE HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant James Alba guilty of multiple child sexual abuse offenses—five counts of aggravated sexual assault of a child and three counts of sexual assault of a child—for sexually abusing his daughter, R.N.D., throughout her childhood.[1] *See* Tex. Penal Code §§ 22.011, 22.021. The trial court assessed appellant's punishment at confinement for 99 years in the Texas Department of Criminal Justice for each of the aggravated-sexual-assault counts and 20 years for each of the sexual-assault counts, ordering some of the sentences to be served

---

[1] The jury heard evidence that from the age of four until R.N.D. left appellant's home at age 17, appellant perpetrated various sexual acts against R.N.D. on numerous occasions, including making her perform oral sex on him, penetrating her sexual organ with his penis, and rubbing her anus with his penis. He referred to the sexual acts as "doing a favor for [him]," and R.N.D. had to "do a favor" in order to receive things (such as toiletries and clothes) or to gain permission to do things (such as play with friends or go to school functions). Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

cumulatively. *See id.* §§ 12.32, 12.33. On appeal, appellant complains about the denial of his motion to dismiss for lack of a speedy trial, the denial of his motion for continuance, the violation of his right to present a complete defense, the admission of "bolstering" testimony, and the failure of the trial court to conduct a hearing outside the presence of the jury before admitting expert testimony. Finding no reversible error, we affirm the trial court's judgments of conviction for Counts Six, Seven, and Eight. However, through our own review of the record, we have found non-reversible error in the remaining judgments of conviction. We will modify these judgments to correct the error and, as modified, affirm the trial court's judgments of conviction for Counts One, Two, Three, Four, and Five.

## DISCUSSION

### Speedy Trial

In his first point of error, appellant asserts that he was denied his right to a speedy trial in violation of the federal and state constitutions, and that the trial court erred in denying his motion to dismiss the indictment based on the speedy trial violation. *See* U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10.

We analyze a speedy trial claim on an ad hoc basis by applying a fact-specific balancing test. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013), *cert. denied*, 134 S. Ct. 934 (2014). Whether raised under the federal or state constitution, we weigh and balance four factors: the length of the delay, the reason for the

delay, the defendant's assertion of his right, and the prejudice inflicted by the delay.[2]  *Barker*, 407 U.S. at 530; *Henson*, 407 S.W.3d at 767.  No single factor is necessary or sufficient to establish a violation of the right to a speedy trial; instead, we must weigh the conduct of the prosecution and defendant using a balancing test of the four factors.  *Barker*, 407 U.S. at 530, 533; *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008).  The State must satisfy its burden of justifying the length of the delay while the defendant must meet his burden of proving the assertion of the right and showing prejudice.  *Cantu*, 253 S.W.3d at 280.  The four factors are related, and we apply them "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed."  *Id.* at 281. Review of the individual factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question.  *Id.* at 282.  In our review, we apply a bifurcated standard in which we review the trial court's determination of historical facts for an abuse of discretion, but review de novo the court's application of the law to the facts.  *Id.* at 282; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

*Length of Delay*

The length of the delay is the triggering mechanism for an analysis of the *Barker* factors.  *Barker*, 407 U.S. at 530; *Zamorano*, 84 S.W.3d at 648.  The length of the delay is measured from the time the defendant is arrested or formally accused.  *Barker*, 407 U.S. at 530; *Harris v. State*,

---

[2]  Although the right to a speedy trial under the Texas Constitution exists independently of the Sixth Amendment guarantee, claims of denial of the state speedy trial right are analyzed under the same four *Barker* factors.  *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

827 S.W.2d 949, 956 (Tex. Crim. App. 1992). Texas courts have generally held that a delay of eight months or more is "presumptively prejudicial" and will trigger a speedy trial analysis. *See Zamorano*, 84 S.W.3d at 649 n.26. In this case, appellant was indicted on November 8, 2004 and his jury trial began on April 8, 2013. The delay of eight years and five months is sufficiently lengthy to trigger a speedy trial analysis under *Barker*.

*Reason for Delay*

Once the length of time is found to be presumptively prejudicial, the burden of justifying the delay falls on the State. *Cantu*, 253 S.W.3d at 280. Different weights are assigned to different reasons for delay. *Barker*, 407 U.S. at 531. A deliberate attempt to delay trial to hamper the defense is weighed heavily against the State. *Id.*; *Zamorano*, 84 S.W.3d at 649. More neutral reasons, such as negligence or crowded dockets, are also weighed against the State, but less heavily than deliberate delay. *Barker*, 407 U.S. at 531; *Zamorano*, 84 S.W.3d at 649. Valid reasons, such as a missing witness or delay caused by plea negotiations, are not weighed against the State at all. *Barker*, 407 U.S. at 531; *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999). Finally, if an accused's own actions constitute the majority of the reason for the delay in trial, this factor weighs against his speedy trial claim. *Starks v. State*, 266 S.W.3d 605, 611 (Tex. App.—El Paso 2008, no pet.). In fact, delay that is attributable in whole or in part to the defendant may constitute a waiver of the speedy trial claim. *See Barker*, 407 U.S. at 528–30 (delay attributable to defendant constitutes waiver of speedy trial); *Munoz*, 991 S.W.2d at 822 (citing *Barker*, 407 U.S. at 528–30); *see also Dickey v. Florida*, 398 U.S. 30, 48 (1970) (Brennan, J., concurring) (defendant may be "disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility").

4

There is no evidence of deliberate delay in this case. In fact, the same month that appellant was indicted, the State filed a formal announcement of ready for trial requesting a speedy trial. Following that, the initial delay appears to have been because of a crowded court docket in that the first trial setting on April 25, 2005 was continued by the court. The case was then set for trial on August 15, 2005 and again on October 17, 2005. Both trial settings were continued on appellant's request.[3] On May 31, 2006, the parties and the court signed an agreed order of incompetency, and appellant was ordered into a treatment facility. For whatever reason, appellant never reported to the sheriff for transport and was never transported to the treatment facility. The record reflects that a subsequent status hearing set for October 12, 2007 was reset to October 26, 2007. The record does not reflect whether the status hearing was held. As the prosecutor stated at the hearing on appellant's motion to dismiss, after appellant was found to be incompetent, the case "fell off the docket."

The case returned to the court's docket in February 2012 after inquiries about the status of the case were received from legal aid representatives providing housing assistance to appellant. The case was then set for several status hearings, which the court was unable to conduct because appellant was indisposed.[4] In April 2012, the parties again agreed that appellant was

---

[3] The record demonstrates that during this time the State was actively preparing for trial in that the prosecutor filed several notices (of the State's witnesses and of extraneous offenses) before the April trial setting and supplemental notices before the August trial setting.

[4] At the hearing on appellant's motion to dismiss, the trial judge lamented that "the last few times that we were supposed to have a hearing, we couldn't due to mysterious illnesses, hospitalizations, and/or comatose nature." The judge stated that the record is "very clear that the reasons why there hasn't been a speedy trial, at least lately, has everything to do with the conspicuous absence of the defendant." Apparently, at one scheduled hearing appellant exited the courtroom via EMS. Then, appellant was hospitalized the day before the subsequently rescheduled

5

incompetent to stand trial, and the court entered a "judgment on uncontested incompetency." A subsequent competency evaluation in May 2012 determined that appellant was competent to stand trial.[5] In August 2012, the case was set for trial on October 29, 2012. On the day of trial, appellant filed a *Motion to Dismiss for Lack of Speedy Trial*. The record does not reflect whether the motion was discussed prior to the start of trial or even brought to the court's attention. The record does reflect, however, that the trial court declared a mistrial after the parties agreed to postpone the trial when appellant kept falling asleep during jury selection.[6] The case was reset for trial on March 18, 2013. At a pretrial hearing on February 15, 2013, appellant filed a motion seeking a continuance of the March 18th trial setting, which was denied. At a pretrial hearing on March 1, 2013, the court heard appellant's motion to dismiss for lack of speedy trial and denied the

---

hearing. No medical records were produced to the court to excuse or explain appellant's absence.

[5] The record reflects that appellant was twice declared incompetent to stand trial: in May 2006 and again in April 2012. Nothing in the record demonstrates that appellant was restored to competency in the interim, and it was only at the May 2012 evaluation that he was determined competent to stand trial. In his brief, appellant argues that his trial counsel was unable to assert his right to a speedy trial due to appellant's incompetence to stand trial, and thus the time related to his incompetence should not be held against him. We do not necessarily disagree with this position. However, by the same token, the delay resulting from appellant's incompetence should not be held against the State. *See Purchase v. State*, 84 S.W.3d 696, 698 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("A defendant's due process right to a fair trial prevents the State from subjecting a person to trial when that person's 'mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'") (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)); *see also Grayless v. State*, 567 S.W.2d 216, 220 (Tex. Crim. App. 1978) ("Delays encountered in bringing a defendant to trial who claims to be incompetent or who is temporarily incompetent ordinarily do not infringe on the right to a speedy trial.").

[6] The record reflects that appellant suffered back pain which required medication and was apparently overmedicated.

motion. On March 18, 2013, appellant filed another motion for continuance, which was granted. The case was reset for trial on April 8, 2013, at which time appellant was tried before a jury.

While the almost eight-and-a-half-year delay between indictment and trial is presumptively prejudicial, the record shows that the lengthy delay was not due to the actions of the State but rather due in part to the overcrowded docket in the trial court but primarily to appellant's repeated requests for continuances and appellant's incompetence to stand trial. Thus, this factor does not weigh against the State.

*Assertion of Right*

Appellant filed a *Motion to Dismiss for Lack of Speedy Trial* seeking dismissal of the indictment on October 29, 2012, almost 8 years after he was indicted. He never asked for a speedy trial. Although a defendant's failure to assert his speedy trial right does not amount to a waiver of that right, failure to assert the right makes it difficult to prove he was denied a speedy trial. *Barker*, 407 U.S. at 532; *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). A defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial and that he was not prejudiced by the lack of one. *Dragoo*, 96 S.W.3d at 314. Furthermore, the longer the delay becomes, the more likely it would be that a defendant who wished a speedy trial would take some action to obtain it. *Id.* Thus, inaction weighs more heavily against a violation the longer the delay becomes. *Id.*

Here, appellant did not assert his speedy trial right for nearly 8 years, and even then his only objective was to obtain a dismissal not a trial. Requesting dismissal of the charges, rather than requesting a prompt trial setting, indicates a desire to have no trial instead of a speedy one.

*Cantu*, 253 S.W.3d at 283. In addition, because appellant never asked for a speedy trial—he asked only for a dismissal in his motion—it was incumbent upon him to show that he had tried to get the case into court so that he could go to trial in a timely manner. *See id.* at 284. He failed to do so. In fact, the record reflects that appellant repeatedly sought continuances and continually acquiesced in (or even actively agreed to) resetting his case for trial, even after he filed his motion to dismiss on speedy trial grounds. Appellant's actions were inconsistent with a demand for speedy trial. *See Henson*, 407 S.W.3d at 769; *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003). Accordingly, this factor weighs heavily against appellant and against finding a violation of his right to speedy trial.

*Prejudice Caused by the Delay*

Prejudice is assessed in light of the three interests a speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. Of these three, the most serious is the last, because the inability of the defendant to prepare a defense skews the fairness of the entire system. *Id.*

Here, appellant was arrested on November 10, 2004, two days after he was indicted, and was released on bond two days later on November 12, 2004. Thus, appellant was out on bond at all relevant times, so he was not prejudiced by pretrial incarceration. With respect to the second interest, appellant offered no evidence to the trial court that the delay had caused him any unusual anxiety or concern beyond the level normally associated with being charged with a felony sexual crime. *See Shaw*, 117 S.W.3d at 890. Finally, with respect to the third interest, we must presume

8

that the lengthy delay here did adversely affect appellant's ability to defend himself; however, this presumption is extenuated by appellant's conduct: his repeated contribution to and longtime acquiescence in the delay. *See id.*; *Dragoo*, 96 S.W.3d at 315. A substantial portion of the delay was attributable to appellant's lack of readiness. *See Zamorano*, 84 S.W.3d at 655–56.

In short, on this record, the trial court could have reasonably concluded that appellant failed to demonstrate sufficient prejudice. Therefore, this factor weighs against finding a violation of his right to speedy trial.

*Balancing the Factors*

Balancing all the *Barker* factors, we conclude that appellant was not denied his right to a speedy trial. Weighing in favor of finding a violation of appellant's speedy trial right is the excessive delay. However, while this first factor supports appellant's position, the last three do not. The delay in this case was caused by a combination of valid and neutral reasons (appellant's incompetence to stand trial and a crowded court docket) as well as reasons attributable to appellant (his repeated requests for continuance). Thus, this factor does not weigh against the State. Weighing against finding a violation of the right is appellant's acquiescence to the 8-year delay, his repeated requests for continuances, his tardy assertion of the right, and his request to dismiss the charges against him rather than seek a trial. Also weighing against finding a violation is appellant's failure to demonstrate prejudice and the fact that any prejudice was extenuated by appellant's conduct.

Balancing the relative weights of the four factors, we conclude that appellant failed to show that he was entitled to relief for lack of a speedy trial. *See Cantu*, 253 S.W.3d at 281; *see also Zamorano*, 84 S.W.3d at 648. We therefore hold the trial court did not err in denying

9

appellant's motion to dismiss the indictment based on a speedy trial violation. *See Barker*, 407 U.S. at 522. We overrule appellant's first point of error.

## Motion for Continuance

During the punishment phase of trial, appellant made an oral request to continue the trial when two defense witnesses (appellant's sister and mother) "went missing during the trial." After hearing a proffer of the missing witnesses' testimony, the trial court denied the motion. In his second point of error, appellant contends the trial court abused its discretion in denying his motion for continuance.

A motion for continuance must be made by sworn, written motion in order to preserve appellate review from a trial court's denial of a motion for a continuance. Tex. Code Crim. Proc. arts. 29.03, 29.08; *see Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012); *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). "[A]n unsworn oral motion preserves nothing for appeal." *Blackshear*, 385 S.W.3d at 591; *see also Anderson*, 301 S.W.3d at 279 (party forfeits right to complain about denial of continuance if party makes unsworn oral motion for continuance).

Here, there was no written, sworn motion for continuance presented to the trial court. Appellant concedes as much in his brief but dismisses the statutory requirements, claiming that no such motion was filed "because [counsel] could not [file one]" due to time constraints and averring that "the trial court seemed satisfied with the oral motion." He then makes what appears to be a due process argument concerning the trial court's denial of his unsworn oral motion, asserting that the violation of his "substantial and due process right to present a defense was so egregious, it denied

10

him the basic right to a fair punishment trial." However, the Texas Court of Criminal Appeals has explicitly rejected a due process exception to the rule requiring motions for continuances to be written and sworn in order to be preserved on appeal. *Anderson*, 301 S.W.3d at 280; *see Blackshear*, 385 S.W.3d at 591.

Given that the motion in question was oral and unsworn, and because no due process exception exists to the written-and-sworn requirement, appellant's complaint about the denial of his motion for continuance was not properly preserved for appeal, *see Blackshear*, 385 S.W.3d at 591, and appellant has forfeited his right to complain about the judge's ruling, *see Anderson*, 301 S.W.3d at 279. We overrule appellant's second point of error.

**Right to Present Defense**

During the defense's case-in-chief, appellant recalled the victim, R.N.D. At a bench conference during her direct examination, appellant's counsel sought permission to ask her the following questions:

> Isn't it true that you indicated that two other men were the ones that had actually sexually assaulted you?
>
> Isn't it true that you said a guy, a person named Manuel, your mother's uncle [sic], had molested you?
>
> Isn't it true that your mother's brother molested you on that tape? Isn't that true?

The State objected after the first question, asserting that the evidence was "[a]bsolutely irrelevant to this." Appellant's counsel did not respond to the objection and presented no argument as to how the evidence was relevant. The trial court refused to allow any of the questions. Appellant's counsel

11

asked the court to "note [his] exception" but offered no argument as to how the testimony he sought to introduce was admissible. In his third point of error, appellant asserts that the trial court's exclusion of evidence concerning R.N.D.'s prior sexual abuse by other men, or statements that she made about such abuse, violated his right to present a complete defense.[7]

Preservation of error is a systemic requirement on appeal. *Blackshear*, 385 S.W.3d at 590; *Boston v. State*, 373 S.W.3d 832, 841 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Blackshear*, 385 S.W.3d at 590; *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010); *Boston*, 373 S.W.3d at 841. An appellate issue involving a proffer of evidence, as opposed to an objection, must still satisfy the preservation-of-error requirements. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (stating that purpose of requiring objection is to give trial court or opposing party opportunity to correct error or remove basis for objection and reasoning that "[a]lthough this case involves a proffer of evidence rather than an objection, the same rationale applies"). To preserve a complaint regarding the exclusion of evidence, a party must not only tell the judge that the evidence is admissible, but must also explain why it is admissible. *Id.* at 177–79. Further, the explanation given at trial must match the one urged on appeal. *Id.* at 179.

In this instance, when the trial court's ruling excluded the complained-of evidence, appellant neither objected to the exclusion on the ground, nor offered the evidence on the basis, that his right to present a complete defense was compromised. While the right to a meaningful

_____

[7] It is unclear from the record, based on the questions appellant proposed, whether appellant was seeking to introduce evidence that R.N.D. had made statements that she had previously been sexually abused by two other men or evidence of the prior sexual abuse itself.

12

opportunity to present a complete defense is rooted in constitutional protections, even constitutional rights may be waived if the proper request, objection, or motion is not asserted in the trial court. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *see also Anderson*, 301 S.W.3d at 279 (right to have meaningful opportunity to present complete defense is forfeitable if not properly raised at trial). Because appellant did not articulate that his right to present a complete defense supported the admission of the complained-of excluded evidence, the trial court never had the opportunity to rule on this rationale. Accordingly, appellant did not preserve his complaint that the exclusion of the complained-of evidence violated his right to present a complete defense. *See Cerda v. State*, No. 03-12-00582-CR, 2014 WL 4179359, at \*6 (Tex. App.—Austin Aug. 22, 2014, no pet. h.) (mem. op., not designated for publication). We overrule appellant's third point of error.

## "Bolstering" Testimony

The State recalled R.N.D. during its rebuttal case. During redirect examination, the following dialog occurred:

| | |
|---|---|
| PROSECUTOR: | Now when you testified at the beginning of the trial, the things that you told the jury that your dad did to you, were those true? |
| WITNESS: | Yes. |
| DEFENSE COUNSEL: | Objection, Your Honor. It's repetitious and bolstering. |
| THE COURT: | Overruled. |
| PROSECUTOR: | Were you being truthful, [R.N.D.], when you talked about those things your dad did to you? |

WITNESS:        Yes.

In his fourth point of error, appellant asserts that the trial court erred in allowing this testimony because it was "improper bolstering."

As noted in the discussions of the previous points of error, preservation of error is a systemic requirement on appeal, *Blackshear*, 385 S.W.3d at 590; *Boston*, 373 S.W.3d at 841, and a reviewing court should not address the merits of an issue that has not been preserved for appeal, *Blackshear*, 385 S.W.3d at 590; *Wilson*, 311 S.W.3d at 473–74; *Boston*, 373 S.W.3d at 841. To preserve a complaint for appellate review, a party must timely object, stating the specific legal basis for the objection if it is not apparent from the context of the objection. Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). An objection is timely if made at the earliest opportunity or as soon as the grounds for the objection become apparent. *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 306 (Tex. App.—Austin 2013, no pet.). If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited. *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *Sandoval*, 409 S.W.3d at 306. Here, appellant objected to R.N.D.'s testimony only after the question concerning the truthfulness of her earlier testimony had been asked and answered. Thus, appellant's objection was untimely.[8]

---

[8] Appellant asserts in his brief that "[a] timely objection was lodged" to the question about whether R.N.D.'s previous testimony was true. We disagree, as the record shows the contrary.

14

Furthermore, with two exceptions that do not apply here, a party must continue to object each time the objectionable evidence is offered.[9] *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Sandoval*, 409 S.W.3d at 287. Although appellant initially objected, albeit untimely, to R.N.D.'s testimony about "the things that [she] told the jury that [her] dad did to [her]" being true, he did not object to the follow-up question and answer, occurring after the trial court overruled appellant's objection, that R.N.D. was being truthful in her earlier testimony "when [she] talked about those things [her] dad did to [her]." Thus, appellant did not continue to object to all of the evidence about the truthfulness of R.N.D.'s earlier testimony, the "bolstering" testimony about which he now complains.

For these reasons, appellant did not preserve his complaint about the admission of improper "bolstering" testimony.[10] *See Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App.

[9] The two exceptions to the requirement of subsequent objections require counsel to either (1) make a running objection, or (2) request a hearing outside the presence of the jury. *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

[10] As this Court has noted in previous opinions, there is some question as to whether a "bolstering" objection preserves error. *See Lubojasky v. State*, No. 03-10-00780-CR, 2012 WL 5192919, at *15 n.13 (Tex. App.—Austin Oct. 19, 2012, pet. ref'd) (mem. op., not designated for publication); *Muniz-Luna v. State*, No. 03-09-00266-CR, 2010 WL 3810820, at *3 n.4 (Tex. App.—Austin Sept. 30, 2010, pet. ref'd) (mem. op., not designated for publication); *Biddy v. State*, No. 03-01-00182-CR, 2002 WL 533652, at *2–3 (Tex. App.—Austin Apr. 11, 2002, no pet.) (mem. op., not designated for publication). We recognize that while "bolstering" was a proper objection in Texas courts prior to the adoption of the Rules of Evidence, the rules themselves contain no specific provision regarding bolstering. *See Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring) (arguing that bolstering objection should no longer be recognized, because "an objection that certain evidence is 'bolstering' in no way invokes the Rules or informs the trial court of the basis for exclusion under the Rules"); *see also Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009) (noting that "[m]any appellate courts have cited the *Cohn* concurrence as authority to abandon 'bolstering' as a valid objection to preserve error for review"). However, given our disposition of this point of error, we need not address the continuing

15

2002) ("[T]he failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence."); *see also Martinez*, 98 S.W.3d at 193 ("[T]he law in Texas requires a party to continue to object each time inadmissible evidence is offered."). Accordingly, we overrule appellant's third point of error.

## Voir Dire of Expert

Also during its rebuttal case, the State called Mike Betancourt, a child forensic interviewer, to testify as an expert. Betancourt was asked to explain what a children's advocacy center is and to describe his education and background as a forensic interviewer. When discussing his interview experience, the prosecutor asked Betancourt about the failure of children he had interviewed to disclose abuse during the interview. Appellant objected asserting that "[t]here's no way that someone could know a negative, if they didn't tell something, so we would object to that being speculative." The trial court overruled the objection, and the prosecutor asked the question again, rephrasing it slightly. Appellant again objected, stating that "there would have to be a lot more groundwork predicate to know if somebody didn't reveal something to you." During the ensuing exchange with the prosecutor, appellant's counsel asked to "have this discussion outside the presence of the jury to determine this witness's qualification." After the trial court refused to allow that, counsel added "Under 701" to his request. Then, at the prosecutor's request, the parties approached the bench. During the bench conference, appellant's counsel requested "a hearing outside the presence of the jury to determine a *Daubert* challenge to see if he's actually qualified to

---

vitality of a "bolstering" objection in Texas.

16

testify to these opinions." When the trial court refused his request, counsel clarified, "Just to be clear, you're refusing my request to examine this witness outside the presence of the jury to determine his qualifications." The trial court confirmed the denial of that request.

In his fifth point of error, appellant contends the trial court erred in failing to follow the proper procedure before permitting Betancourt to testify as an expert. Specifically, he asserts that the trial court erred in refusing to allow appellant an opportunity to voir dire Betancourt before he testified "in contradiction of Texas Rule of Evidence 705(b)."[11] The State responds that appellant failed to preserve this complaint because his complaint on appeal does not comport with his request at trial. We agree.

Once again, preservation of error is a systemic requirement on appeal, *Blackshear*, 385 S.W.3d at 590; *Boston*, 373 S.W.3d at 841, and a reviewing court should not address the merits of an issue that has not been preserved for appeal, *Blackshear*, 385 S.W.3d at 590; *Wilson*, 311 S.W.3d at 473–74; *Boston*, 373 S.W.3d at 841. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request that states the specific grounds for the desired ruling if they are not apparent from the context of the request. *See* Tex. R. App. P. 33.1(a)(1); *Clark*, 365 S.W.3d at 339. Further, the point of error on appeal must comport with the request made at trial. *See Yazdchi*, 428 S.W.3d at 844; *Clark*, 365 S.W.3d at 339.

---

[11] In his brief, appellant initially phrases this point of error as the trial court's erroneous admission of expert testimony "without first conducting the proper analysis of (1) the expert's qualifications, (2) the reliability of the subject matter of the testimony, and (3) relevance of the proposed testimony." However, the substance of his argument is that the trial court erred in failing to grant his request to conduct a voir dire hearing of Betancourt outside the jury's presence pursuant to Texas Rule of Evidence 705(b).

17

As is apparent from the above discussion, appellant requested a hearing outside the presence of the jury to examine Betancourt's qualifications as an expert. On appeal, he asserts that he was denied the opportunity to voir dire Betancourt under Texas Rule of Evidence 705(b), which provides, as is relevant here, that "[p]rior to the expert giving the expert's opinion or disclosing the underlying facts or data, a party against whom the opinion is offered upon request in a criminal case shall . . . be permitted to conduct a voir dire examination [outside the jury's presence] *directed to the underlying facts or data upon which the opinion is based*." Tex. R. Evid. 705(b) (emphasis added). A request to take a witness on voir dire to "prove up" his expert qualifications, however, does not constitute a request for a Rule 705(b) hearing to inquire into the "underlying facts or data" of the expert's opinion. *Jenkins v. State*, 912 S.W.2d 793, 814 (Tex. Crim. App. 1995) (op. on reh'g). Consequently, appellant's request to conduct a voir dire examination of Betancourt "to determine his qualifications" was not a request for a Rule 705(b) hearing outside the jury's presence to explore the "underlying facts or data" of Betancourt's opinion. *See id.*; *Wooten v. State*, No. 03-11-00667-CR, 2013 WL 1831571, at *4–5 (Tex. App.—Austin Apr. 24, 2013, no pet.) (mem. op., not designated for publication). Appellant failed to preserve his Rule 705(b) claim for appeal. *See Jenkins*, 912 S.W.2d at 814; *Wooten*, 2013 WL 1831571, at *5; *Hernandez v. State*, No. 14-07-00124-CR, 2008 WL 2262046, at *5 (Tex. App—Houston [14th Dist.] May 29, 2008, pet. ref'd) (mem. op., not designated for publication); *see also Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) ("[U]nder Rule 33.1, the issue is . . . whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal."). Accordingly, we overrule appellant's fifth point of error.

18

**Cumulation Order**

As an additional matter, we address sua sponte the legality of the trial court's cumulation order. At sentencing, the State moved to cumulate the sentences of Counts One and Two. Ultimately, in the oral pronouncement of sentence, the trial court ordered the cumulation for the sentences of Counts Three through Eight and then ordered the two 99-year sentences for Counts One and Two to run concurrently with each other but consecutive to the sentences for Counts Three through Eight. The written judgments of conviction reflect this cumulation order.

When multiple offenses arising out of the "same criminal episode" are tried in the same criminal action, the sentences must be concurrent unless a specific statutory exception within chapter three of the Texas Penal Code provides otherwise. Tex. Penal Code § 3.03(a); *Sullivan v. State*, 387 S.W.3d 649, 651 (Tex. Crim. App. 2013). One such exception provides that consecutive sentences may be imposed for convictions for certain types of sexual offenses if the offenses were committed against a victim younger than 17 years of age. *See* Tex. Penal Code § 3.03(b)(2)(A). This presumably was the exception the State and the trial court relied on in this case. However, this exception is inapplicable to Counts One through Five.

The provision of Section 3.03 of the Texas Penal Code adding the exception for the cumulation of child sexual abuse offenses, Section 3.03(b)(2)(A), was enacted in 1997 and became effective September 1, 1997. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 891, *amended by* Act of May 31, 1997, 75th Leg., R.S., ch. 668, §§ 2, 8, sec. 3.03, 1997 Tex. Gen. Laws 2250, 2251–53 (now codified at Tex. Penal Code § 3.03(b)(2)(A)). The savings clause to the bill amending Section 3.03 to add the exception provides, in relevant part,

19

that "[t]he change in law made by this Act applies only to an offense committed on or after the effective date of this Act. . . . An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose." *See* Act of May 31, 1997, 1997 Tex. Gen. Laws at 2253. The law in effect at the time appellant perpetrated the aggravated-sexual-assault-of-a-child offenses for which he was convicted in Counts One through Five did not authorize the cumulation of sentences for child sexual abuse offenses.[12] Thus, the trial court did not have the authority to cumulate the 99-year sentences for the aggravated-sexual-assault-of-a-child offenses in Counts One, Two, Three, Four, and Five, and these sentences must run concurrently with each other. *See* Tex. Penal Code § 3.03(a).

An improper cumulation order is a void sentence. *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992). Although appellant has not complained at trial or on appeal about the cumulation of the aggravated-sexual-assault-of-a-child sentences being illegal sentences, any court

---

[12] At the time of the offenses for which appellant was convicted in Counts One and Two, Section 3.03 provided,

> When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, sentence for each offense for which he has been found guilty shall be pronounced. Such sentences shall run concurrently.

*See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 891. There were no statutory exceptions authorizing the cumulation of sentences. The statute was amended in 1995 to add an exception authorizing the cumulation of sentences for convictions for intoxication manslaughter. *See* Act of May 26, 1995, 74th Leg. R.S., ch. 596, § 1, sec. 3.03, 1995 Tex. Gen. Laws 3435. This amended statute was in effect at the time of the offenses for which appellant was convicted in Counts Three, Four, and Five. *See id.* § 2 (changes in law made by amended statute applies to offenses committed on or before effective date of amended statute), § 4 (amended statute effective September 1, 1995).

with jurisdiction has inherent authority to notice and take action on an illegal or void sentence at any time, even sua sponte. *Mizell v. State*, 119 S.W.3d 804, 805–07 (Tex. Crim. App. 2003). An unlawful cumulation order is remedied by reforming the judgment to set aside the order. *Robbins v. State*, 914 S.W.2d 582, 584 (Tex. Crim. App. 1996); *see Beedy v. State*, 250 S.W.3d 107, 113 (Tex. Crim. App. 2008) (reaffirming that unlawful cumulation order is remedied by reforming judgment to set aside cumulation order). Accordingly, we modify the judgments of conviction for Counts One, Two, Three, Four, and Five to delete the cumulation order.

## CONCLUSION

Having overruled appellant's five points of error, we affirm the trial court's judgments of conviction for Counts Six, Seven, and Eight. Correcting non-reversible error, we modify the trial court's judgments of conviction for Counts One, Two, Three, Four, and Five to delete "CONSECUTIVELY" and instead reflect that the sentence shall run "CONCURRENTLY" and to delete the cumulation order. As so modified, we affirm the judgments of conviction for Counts One, Two, Three, Four, and Five.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed; Modified and, as Modified, Affirmed

Filed: November 7, 2014

Do Not Publish

21