# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-14-00806-CR
---

**Delane Dumas, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. C-1-CR-13-219171,
### HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

A jury convicted Delane Dumas of the offense of driving while intoxicated. *See* Tex. Penal Code § 49.04. After appellant waived the jury's assessment of punishment and pleaded true to a previous DWI conviction, the trial court assessed punishment at confinement for one year and a fine of $4,000, but suspended imposition of the sentence and placed appellant on community supervision for 20 months. On appeal, appellant challenges the admission of the audio recording of a 911 call and argues that the dash-cam video recording of the traffic stop should have been suppressed. For the reasons that follow, we affirm.[1]

---

[1] Because the parties are familiar with the facts of the case and its procedural history, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

**BACKGROUND**

Around 11:00 p.m. on Saturday night, November 9, 2013, the Austin Police Department received a transferred 911 call from Hays County about a "reckless" driver heading north on the interstate highway I-35. The Hays County dispatcher provided a description of the vehicle and its license plate number and conveyed that the caller reported that the vehicle was unable to "maintain a single lane" and was driving approximately "90 miles per hour." After the call was transferred, the caller identified himself by name, gave his telephone number and location, and further explained that the vehicle "almost side-swiped us" and that the driver "was real erratic on the speed," "looking down and texting," and that the driver had "been everywhere from the left hand lane to the middle lane to side-swiping us."

An Austin police officer received the "call text" on his computer screen. The call was titled "DWI/reckless" and reported that "they were driving very fast, somewhere around 90 miles an hour, and they were swerving." The police officer observed the vehicle matching the description from the 911 call traveling north on I-35, and he began following the vehicle. After he confirmed the license plate number matched the one reported in the 911 call and observed the vehicle "drifting from side to side" within its lane and then get off and then immediately back on I-35 without signals, he initiated a traffic stop. Appellant was the driver and sole occupant of the vehicle. As a result of the traffic stop, appellant was arrested for DWI.

The jury trial occurred in December 2014, and the arresting police officer and the APD dispatcher who took the incoming 911 call testified. The exhibits included the 911 call and the dash-cam video recording of the traffic stop. The jury returned a verdict of guilty, and appellant

waived his right to have the jury assess his punishment and pleaded true to the enhancement paragraph of a previous DWI conviction. The trial court thereafter assessed punishment at confinement for one year and a fine of $4,000, but suspended imposition of the sentence and placed appellant on community supervision for 20 months. This appeal followed.

## DISCUSSION

### Admission of Audio Recording of 911 Call

In his first issue, appellant argues that the trial court erred in admitting the State's exhibit of the audio recording of the 911 call because the probative value of the call was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. *See* Tex. R. Evid. 403 (authorizing court to exclude relevant evidence "if its probative value is substantially outweighed" by, among others, danger of unfair prejudice, confusion of issues, or misleading jury). The State counters, among its arguments, that appellant did not preserve this complaint for appellate review.

Preservation of error is a systemic requirement on appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012); *Boston v. State*, 373 S.W.3d 832, 841 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *see Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014). A reviewing court should not address the merits of a complaint that has not been preserved for appeal. *Blackshear*, 385 S.W.3d at 590; *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009); *Boston*, 373 S.W.3d at 841. "To preserve error for appellate review, the Texas Rules of Appellate Procedure require that the record show that the objection 'stated the grounds for the ruling that the complaining party sought from the trial court

with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.'" *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (quoting Tex. R. App. P. 33.1(a)(1)(A)). "The point of error on appeal must comport with the objection made at trial." *Id.* "In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time." *Id.*; *see Resendez v. State*, 306 S.W.3d 308, 313–14 (Tex. Crim. App. 2009).

Here the trial court considered the admissibility of the audio recording of the 911 call outside the presence of the jury. At the outset, the prosecutor explained her understanding of the purpose for the hearing: "I think [appellant's counsel] wants to have a hearing about whether or not it's in violation of his client's confrontation right." *See* U.S. Const. amend. VI (including, among rights of accused in criminal prosecutions, the right "to be confronted with the witnesses against him"). Consistent with the prosecutor's understanding, appellant's counsel argued that "the content, what the person said they saw" during the 911 call was not admissible without the ability to cross-examine the caller because he had the "right to confrontation of the witness if they're going to get into the substance of what the witness allegedly saw." He gave examples of questions that he could have asked the caller that would not get answered and then argued: "So there's a real danger of unfair prejudice, which is why you have the right of confrontation." When the prosecutor later moved to admit the audio recording of the 911 call in front of the jury, appellant's counsel again objected to its admission, stating his objections as follows:

> Judge, I think, first of all, it is hearsay, whether or not there is an exception that applies. Secondly, I do believe that it violates the United States Constitution in that he has a right to confront the witness. And here, the substance of what these

4

witnesses are allegedly seeing, is going to be admitted without an opportunity for cross-examination. So I do believe that violates our constitution. And then, also, I think there is a very high danger of unfair prejudice, given the fact that these people are going to give just one rendition, without the jury hearing the whole story. So I would object, stridently, to the admission of the 911 call.

Appellant focuses on his counsel's statement in which he states that there was "a very high danger of unfair prejudice" to support his position that his objection was not limited to a confrontation clause objection but that it could also be interpreted as an objection under rule 403. But, viewed in context, we cannot conclude that the trial court and opposing counsel would have understood the reference of "unfair prejudice" to be a separate rule 403 objection in addition to appellant's confrontation clause objection that the substance of the 911 call was inadmissible without the opportunity to cross-examine the caller. *See Clark*, 365 S.W.3d at 339 ("Usually, for a complaint to be obvious without having been explicitly stated and still satisfy the [main purposes of requiring a specific objection], there have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be."); *Resendez*, 306 S.W.3d at 315–17 (concluding that claim was not preserved because there was nothing in record to indicate that appellant raised claim or "to support contention that the trial judge or opposing counsel understood the appellant to have made this claim"). Thus, we conclude that appellant did not preserve his first issue for appellate review. *See* Tex. R. App. P. 33.1. On this basis, we overrule appellant's first issue.

5

**Video Recording of Traffic Stop**

In his second issue, appellant argues that the trial court should have suppressed the dash-cam video recording of the traffic stop.

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Under that standard, we defer to the trial court's determination of historical facts "if supported by the record," *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013), but we review de novo the trial court's application of the law to those facts, *Wilson*, 311 S.W.3d at 458. Similarly, we "afford almost total deference" to rulings on mixed questions of law and fact when the resolution of those questions depends on the evaluation of credibility and demeanor but review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). We also review de novo purely legal questions. *Id.*

Here, the trial court did not enter findings of fact. Thus, we must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citing *Carmouche*, 10 S.W.3d at 328)). In a suppression hearing, the trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

6

Appellant argues that the trial court should have suppressed the video recording because the police officer did not have reasonable suspension to initiate the traffic stop. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (authorizing traffic stop when officer reasonably suspects that driver has violated law); *see also* U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person actually is, has been, or soon will be, engaged in criminal activity." *Ford*, 158 S.W.3d at 492–93 (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent." *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013) (citing *Terry*, 392 U.S. at 21–22 and *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). In making the determination of whether reasonable suspicion existed, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492–93; *Garcia*, 43 S.W.3d at 530.

Appellant argues that the police officer did not have reasonable suspicion because he did not personally observe appellant driving recklessly, speeding, or commit a traffic violation before the police officer initiated the traffic stop. He argues that the police officer was mistaken when he determined that appellant committed a traffic offense by failing to signal. The controlling question, however, is whether an objective basis existed for the traffic stop without regard to the officer's subjective intent. *See Kerwick*, 393 S.W.3d at 274. Further, depending on the totality of the circumstances, a police officer does not have to observe a traffic violation before stopping a

7

vehicle. *See Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014) ("It is not necessary that the reasonable suspicion relate to a specific criminal offense."); *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) ("The State does not have to establish with absolute certainty that a crime occurred; it just has to carry its burden of proving that, under the totality of the circumstances, the seizure was reasonable."); *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011) ("[I]t is not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction."); *Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (finding that court of appeals failed to consider "rational inference" from "car weaving in and out of his lane several times, over short distance, late at night" in its determination of whether there was justification for detention).

The police officer testified that he began following appellant's vehicle on I-35 based on the 911 call of a "reckless" driver who "was driving very fast, somewhere around 90 miles an hour" and "swerving." Although the police officer was unaware of the specific details of the 911 call prior to the traffic stop, he testified that he confirmed that appellant's vehicle's license plate number matched the license plate number reported by the 911 caller prior to the traffic stop, the information known collectively by the police officer and the APD dispatcher included the reported facts of the 911 call, and the 911 caller provided his name and contact information. *See Derichsweiler*, 348 S.W.3d at 914–15 (considering "'cumulative information known to the cooperating officers'" to determine whether reasonable suspicion existed at time of traffic stop and observing that "911 police dispatcher is ordinarily regarded as a 'cooperating officer' for purposes of making this determination" and "information provided to police from citizen-informant who

8

identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable"); *Brother v. State*, 166 S.W.3d 255, 257–58 (Tex. Crim. App. 2005) (affirming appellate court's conclusion that officer had reasonable suspicion to make traffic stop even though officer did not personally observe activity that would give rise to reasonable suspicion when "citizen gave a detailed description of appellant's car and location, as well as his erratic driving" to 911 dispatcher). Considering the totality of the circumstances, we conclude that the evidence supports the trial court's implied finding that the police officer had reasonable suspicion to initiate the traffic stop. *See Wiede*, 214 S.W.3d at 25; *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

As part of this issue, appellant argues that the facts stated in the 911 call should not be considered to determine if the police officer had reasonable suspicion because he did not sufficiently corroborate those facts. *See Brother*, 166 S.W.3d at 259 n.5 (explaining that "corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified" (citing *Alabama v. White*, 496 U.S. 325, 330–31 (1990)). Appellant, however, did not raise this specific complaint with the trial court. He, thus, failed to preserve it for appellate review, and we do not further address it. *See* Tex. R. App. P. 33.1.

Because we conclude that the trial court did not err in denying appellant's motion to suppress, we overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   July 13, 2016

Do Not Publish